Grazyna ZALEWSKA Plaintiff–Appellant,

v.

COUNTY OF SULLIVAN, NEW YORK, Judith Maier and Terence O'Neill, Defendant–Appellee.

Docket No. 02–7099.

United States Court of Appeals, Second Circuit.

Argued Aug. 28, 2002.

Decided Jan. 10, 2003.

Robert N. Isseks, Middletown, New York, for Plaintiff–Appellant.

Michael Frey, Liberty, New York (Appelbaum, Bauman, Appelbaum & Frey, Liberty, New York, of counsel), for Defendant–Appellee.

Before: MESKILL, CARDAMONE, and STRAUB, Circuit Judges.

CARDAMONE, Circuit Judge.

On this appeal we are asked to consider whether a municipal transit authority's dress code which mandates that all employees wear pants as part of a driver's uniform is an unconstitutional infringement when applied to a female employee who seeks to wear a skirt. The female employee alleges that her Fourteenth Amendment rights to due process and equal protection of the law, and her First Amendment right to free expression were all violated by the governmental directive. The Scots' poet Robert Burns wrote that rank and clothes are "but the guinea's stamp," and that "[a] man's a man for a' that!" Robert Burns, *For A' That And A' That, in* III The Poetical Works of Robert Burns 152 (Boston, Little, Brown & Co. 1863). But the aggrieved female driver insists that a woman forced by her employer to wear pants on the job is not "a woman for a' that." We have no doubt she strongly feels this as she makes plain in her papers, but our inquiry must be focused on whether the Constitution grants her the right to ignore her employer's dress code. We conclude that it does not.

## BACKGROUND

### A. *Facts*

The facts in this case are not in dispute. Appellant Grazyna Zalewska was employed by the Sullivan County Transportation Department in Sullivan County, New York, as a van driver for a "Meals on Wheels" program from January 1996 until April 2000. Zalewska's duties included transporting senior citizens from their homes to various nutrition sites and transporting food from the county's main kitchen to those sites where the senior citizens were fed.

On December 1, 1999 the county instituted a policy mandating that all Department of Transportation employees wear a uniform while working. Its stated purpose was to "encourage … customers to be more respectful of the drivers, to foster a positive esprit-de-corps among drivers and to project an overall positive appearance for the County of Sullivan in its ongoing efforts to promote itself." The required uniform consisted of a shirt, a jacket, and a pair of pants. Pants were mandated because the county believes "pants are safer than skirts for the operators of vans, particularly vans with chair lifts, as the operator must assist customers on and off the vehicle." The policy was adopted in consultation with Zalewska's union, and a written agreement between the county and the union acknowledged that all drivers would have to wear the new uniforms or face disciplinary action.

Upon learning of the new policy, Zalewska, who "as a matter of familial and cultural custom … [had] never worn pants in her entire life" asked her supervisor, Transportation Coordinator Terence

O'Neill, why she could not wear a skirt. She was told the policy would not be altered and that no exception would be made for her. Nonetheless, when Zalewska went to the private vendor to be fitted for her uniform, she requested and obtained a skirt instead of pants. She explained her action by stating that for her "the wearing of a skirt constitutes ... an expression of a deeply held cultural value." Appellant worked in her customized uniform for three weeks without incident. On April 17, 2000 her supervisor demanded that she return the skirt, and informed her that she had to wear pants if she wanted to return to work. Subsequently, the county filed charges of misconduct and insubordination against Zalewska, accusing her of refusing to return items that were charged to and paid for by the Transportation Department, and of refusing to wear the required uniform to work. Zalewska was suspended from her position as a van driver, and transferred to another county department where she still works at the time of this appeal. At her new post, she is allowed to wear a skirt and receives the same pay as she had as a van driver.

### B. *Prior Proceedings*

In response to the county's action, Zalewska filed the instant suit in the United States District Court for the Southern District of New York (Chin, J.), seeking damages under 42 U.S.C. §§ 1981 and 1983. In her complaint, she alleged that defendants deprived her of her rights to due process and equal protection of the law under the Fourteenth Amendment, and of her right to free expression under the First and Fourteenth Amendments to the United States Constitution. Upon submission of a set of stipulated facts and upon both parties' motions for summary judgment, the district court dismissed Zalewska's claims and granted summary judgment to defendants, Sullivan County,

Judith Maier and Terence O'Neill. Zalewska appeals that judgment. We affirm.

### DISCUSSION

#### I Waiver of Jury Trial

Before turning to the merits, a procedural issue raised on this appeal must first be resolved. Appellant declares that since she never gave her express and unequivocal consent that the trial court proceed with a summary bench trial, her right to a jury was not waived. *See Acuff–Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 142–43 (2d Cir.1998). Further, she asserts that the county's no-skirt policy is based on unsupported conclusory contentions, so that the key finding of whether such a policy was rational presents a fact issue to be decided by a jury. We disagree.

Although in its opinion the district court discussed the permissibility of a summary bench trial, its ultimate disposition of appellant's claims did not rest on judicial factfinding. As it expressly stated in denying appellant's reconsideration motion, the record presented no factual disputes. The question of rationality of the county's policy, which we discuss later, is one of law, not fact. *See Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). The county was found entitled to judgment as a matter of law under the traditional summary judgment principles. Accordingly, whether appellant waived her right to a jury trial is irrelevant. We turn now to the merits.

#### II Standard of Review

We review a trial court's decision to grant summary judgment *de novo*. *See Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir.2002). Because there are no disputed questions of fact, but only questions of law, we must decide if the district court erred in grant-

ing summary judgment for defendant Sullivan County and denying summary judgment for appellant.

## III Appellant's Constitutional Claims

### A. *First Amendment Symbolic Speech*

■ Zalewska alleges that Sullivan County's regulation prohibiting van drivers from wearing skirts is a violation of her right to free expression under the First and Fourteenth Amendments. The First Amendment inquiry contains two parts: (1) whether Zalewska's actions constitute "expressive conduct" entitled to protection under the First Amendment, as incorporated by the Fourteenth; and if so, (2) whether the county's regulation impermissibly denies her such protection. *See Texas v. Johnson*, 491 U.S. 397, 403, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

Appellant's First Amendment argument rests on her claim that wearing a skirt is for her "an expression of a deeply held cultural value." So strongly held is her desire to express her cultural values that she declares she has never worn pants. We realize that for Zalewska—as for most people—clothing and personal appearance are important forms of self-expression. For many, clothing communicates an array of ideas and information about the wearer. It can indicate cultural background and values, religious or moral disposition, creativity or its lack, awareness of current style or adherence to earlier styles, flamboyancy, gender identity, and social status. From the nun's habit to the judge's robes, clothing may often tell something about the person so garbed.

Yet, the fact that something is in some way communicative does not automatically afford it constitutional protection. For purposes of the First Amendment, the Supreme Court has repeatedly rejected the view that "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging ·in the conduct

intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). We echoed this view in *East Hartford Educ. Ass'n v. Bd. of Educ. of the Town of East Hartford*, 562 F.2d 838 (2d Cir.1977), where we recognized that acknowledging the symbolic speech-like qualities of a course of conduct is "only the beginning, and not the end, of constitutional inquiry." 562 F.2d at 857.

■ To determine whether conduct is expressive and entitled to constitutional protection requires an inquiry into whether the activity is "sufficiently imbued with the elements of communication to fall within the scope of the First and Fourteenth Amendments," *Johnson*, 491 U.S. at 404, 109 S.Ct. 2533, for not all conduct may be viewed as speech simply because by her conduct the actor intends to express an idea. *See Spence v. Washington*, 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974). To be sufficiently imbued with communicative elements, an activity need not necessarily embody "a narrow, succinctly articulable message," *Hurley v. Irish American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995), but the reviewing court must find, at the very least, an intent to convey a "particularized message" along with a great likelihood that the message will be understood by those viewing it. *Johnson*, 491 U.S. at 404, 109 S.Ct. 2533; *Spence*, 418 U.S. at 410–11, 94 S.Ct. 2727. Neither of those elements is present here.

■ 1. *Particularized Message.* First, the message that Zalewska intends to convey is not a specific, particularized message, but rather a broad statement of cultural values. Action attempting to communicate such a "vague and unfocused" message is afforded minimal if any First Amendment protection. *East Hartford,*

562 F.2d at 858. In *East Hartford* we reviewed a public school's decision to reprimand a teacher who violated the school's dress code by refusing to wear a necktie. *See id.* at 856. The plaintiff there contended, as Zalewska does here, that the school impermissibly deprived him of his rights to free speech and due process. On his First Amendment claim, the teacher asserted that his refusal to wear a tie was "speech" because it conveyed a message of non-conformity and a rejection of older traditions, by which he hoped to establish closer rapport with his students. *See id.* at 857. We ruled that even though plaintiff's actions were intended as expression, the message purportedly conveyed was a "comprehensive view of life and society" which was "sufficiently vague" to allow the school to regulate it without running afoul of the Constitution. Similarly, Zalewska's actions here seek to communicate a vague, overarching view of cultural tradition.

2. *Comprehensibility of Message.* Second, it is difficult to see how Zalewska's broad message would be readily understood by those viewing her since no particularized communication can be divined simply from a woman wearing a skirt. Essential to deciding whether an activity carries a perceptible message entitled to protection is an examination of the context in which the activity was conducted. *See Johnson,* 491 U.S. at 405, 109 S.Ct. 2533. The Supreme Court has been careful to distinguish between communicative activity with a clear contextual message, such as the wearing of a black armband in protest during the Vietnam War, compared with other types of activity, like choosing what to wear in the ordinary course of employment. *See Tinker v. Des Moines Sch. Dist.,* 393 U.S. 503, 507–08, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The statement in *Tinker*—that regulation of "length of skirts or type of clothing, ... hair style, or deportment" is different from that sort of regulation that "involves di-

rect, primary First Amendment rights akin to 'pure speech' "—suggests that a person's choice of dress or appearance in an ordinary context does not possess the communicative elements necessary to be considered speech-like conduct entitled to First Amendment protection. 393 U.S. at 507–08, 89 S.Ct. 733. *See also Kelley, Comm'r, Suffolk County Police Dep't v. Johnson,* 425 U.S. 238, 245, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) (discussing Supreme Court First Amendment precedents).

Of course, there may exist contexts in which a particular style of dress may be a sufficient proxy for speech to enjoy full constitutional protection. A state court in Massachusetts, for example, found in *Doe ex rel. Doe v. Yunits,* 2000 WL 33162199 (Mass.Super.Oct.11, 2000), that a male high school student's decision to wear traditionally female clothes to school as an expression of female gender identity was protected speech. Although not binding on us, this case illustrates the point. In *Yunits,* the plaintiff's dress was an expression of his clinically verified gender identity. This message was readily understood by others in his high school context, because it was such a break from the norm. It sent a clear and particular message about the plaintiff's gender identity. By contrast, a woman today wearing a dress or a skirt on the job does not automatically signal any particularized message about her culture or beliefs.

Although appellant's activity is expressive, it does not constitute the type of expressive conduct which would allow her to invoke the First Amendment in challenging the county's regulation because the ordinary viewer would glean no particularized message from appellant's wearing of a skirt rather than pants as part of her uniform. Given that Zalewska's conduct does not constitute expressive conduct entitled to First Amendment protection, we

need not discuss whether the county impermissibly denied her that protection. *See Johnson*, 491 U.S. at 403, 109 S.Ct. 2533. Accordingly, the district court properly dismissed appellant's First Amendment claim.

### B. *Due Process*

#### 1. *Liberty Interest in Appearance*

 Zalewska further maintains that Sullivan County's dress code deprived her of her liberty interest in personal appearance without due process of law in violation of the Fourteenth Amendment. A substantial body of precedent suggests the existence of a liberty interest in one's personal appearance. In general, "[l]iberty under law extends to the full range of conduct which the individual is free to pursue." *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *see also Poe v. Ullman*, 367 U.S. 497, 543, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting) (describing liberty as "a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints").

Several of our sister circuits have specifically found the existence of a liberty interest in appearance, *see Rathert v. Village of Peotone*, 903 F.2d 510, 514 (7th Cir.1990) (police officers wearing earrings); *DeWeese v. Town of Palm Beach*, 812 F.2d 1365, 1367 (11th Cir.1987) (prohibiting shirtless male jogger unreasonable); *Domico v. Rapides Parish Sch. Bd.*, 675 F.2d 100, 101 (5th Cir.1982) (prohibition against beards applied to teachers in public school). While neither our Circuit nor the Supreme Court has squarely ruled on the issue, both have assumed the existence of such an interest in deciding cases similar to the one before us. *See Kelley*, 425 U.S. at 244, 96 S.Ct. 1440 (assuming liberty interest in appearance for members of police force while upholding police department's regulation of hair length); *see also East Hartford*, 562 F.2d at 861 (assuming liberty interest in appearance for high school teacher while upholding school's requirement that teacher wear necktie). We agree with the district court's comment that "[s]ince *Kelley*, the nation's courts have assumed or found [a liberty interest] in a veritable fashion show of different factual scenarios." Accordingly, we also assume, for purposes of this opinion, the existence of a liberty interest in appearance.

 The more difficult question is whether Sullivan County unconstitutionally infringed on Zalewska's liberty interest by mandating that she wear pants on the job. The appropriate standard depends, in part, on context and circumstances. *See East Hartford*, 562 F.2d at 863. In examining context, as already noted, courts have found greatly significant the distinction between regulating public employees and regulating members of the public at large. In *Kelley*, the Supreme Court upheld a police department's hair and grooming regulation against a challenge similar to the one presented here. The Court noted the "wide latitude" accorded the government in managing its internal affairs, particularly in regulating a police force. *See Kelley*, 425 U.S. at 247, 96 S.Ct. 1440.

We explicitly extended this reasoning to all public employment, noting that in that context, a liberty interest in choice of apparel is far from a "fundamental right," *United States v. Carolene Products*, 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), and is therefore afforded only the minimal protection of the rational basis test. *See East Hartford*, 562 F.2d at 861 & n. 13; *see also Kelley*, 425 U.S. at 245, 96 S.Ct. 1440 (noting that "there is surely even more room for restrictive regulations of state employees where the claim implicates only the more general contours of

the substantive liberty interest protected by the Fourteenth Amendment"); *Tardif v. Quinn*, 545 F.2d 761, 763 (1st Cir.1976) ("Whatever constitutional aspect there may be to one's choice of apparel generally, it is hardly a matter which falls totally beyond the scope of the demands which an employer, public or private, can legitimately make upon its employees.").

### 2. *Claim Analyzed Under Rational Basis Review*

■■■■ Because Zalewska's claim does not implicate a fundamental right, it is subject to rational review. Accordingly, we analyze Zalewska's liberty interest claim under rational review. Rational basis review has been part of American jurisprudence since the nation's earliest days. Under it, the legislative or executive regulation must be permissible, rationally related to a legitimate government interest, and not impose an irrational burden on individuals. If the end is "legitimate" and not prohibited by the Constitution, and the means are "appropriate" and "plainly adapted to that end," then the legislation or policy is constitutional. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421–23, 4 L.Ed. 579 (1819). And, for a court to further "inquire into the decree of its necessity, would be to pass the line which circumscribes the judicial department, and to tread on legislative ground." *Id.* Thus, rational review requires a nexus between legitimate government ends falling within constitutionally permissible powers, and a means not prohibited by the Constitution to achieve them.

■■■■ Applying that standard, the county's dress code is valid unless it is "so irrational that it may be branded 'arbitrary,' and therefore a deprivation of [appellant's] 'liberty' interest." *Kelley*, 425 U.S. at 248, 96 S.Ct. 1440. The county need only articulate a legitimate government interest to which its regulation is

rationally related. *See Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 314–15 & n. 6, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam); *Johnson v. Robison*, 415 U.S. 361, 376, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563 (1955). It is stipulated in the record before us that the county believes "the wearing of a skirt, rather than pants[,] presents a safety issue for van operators" and "the wearing of pants as part of the uniform projects a professional appearance for the drivers, encourages customers to demonstrate respect for County drivers, fosters a positive attitude on behalf of the drivers and projects an overall positive image for the County of Sullivan."

We accept that safety, professionalism, and a positive public image are legitimate interests for the county to pursue, and we are not in a position to weigh arguments in favor of and against a pants-only uniform for fear of treading on executive ground.

■■■■ The county's regulation rests on firm ground with its goal of promoting safety. The county points out that a long, wide skirt may pose a safety problem for employees operating chair lifts and helping people on and off buses. Although Zalewska challenges the validity of such concerns, "the question is not ... whether the [county] can establish a genuine public need for the specific regulation." *Kelley*, 425 U.S. at 247, 96 S.Ct. 1440. If there is any "reasonably conceivable state of facts that could provide a rational basis" for believing that skirts may pose a safety concern, it is not so arbitrary as to fail the constitutional test. *Heller*, 509 U.S. at 320, 113 S.Ct. 2637 (*quoting FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)); *see also Williamson*, 348 U.S. at 487–88, 75 S.Ct. 461 (holding that "the law need

not be in every respect logically consistent with its aims"). Because a long or wide skirt could conceivably become entangled in a chair lift mechanism, whereas a narrow skirt could conceivably restrict a driver's movements to the point of interfering with her ability to help people on and off a van, the county's safety argument is not irrational.

We do think, however, that the prohibition on the wearing of a skirt as an adjunct of professionalism and in encouraging customer respect may be somewhat problematic. Were it our decision to make, we would perhaps not embrace the notion that skirts are inherently unprofessional or that wearing them does not encourage customer respect or enhance the service's public image. But, it is not our decision to make and, in any event, we have already accepted that safety, professionalism, and a positive public image are legitimate interests for the county to pursue. Hence, we defer to the county's decision and uphold its no-skirt dress code for female van drivers employed by the county.

### C. *Equal Protection*

 It has long been recognized that certain forms of gender discrimination warrant enhanced scrutiny by courts, requiring that the challenged classification be substantially related to an important government purpose. *See Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). State action is impermissible if it perpetuates old gender stereotypes by the disparate treatment of similarly situated men and women based on sex. *See id.* at 198–99, 97 S.Ct. 451. Appellant here urges that the county is subjecting her to discrimination by forcing her to "dress more masculinely," in a way that is demeaning to women. Asking us to accept the proposition that a woman wearing pants dresses more masculinely requires a perpetuation of the very stereotypes that courts are supposed to suppress. In this

modern day men and women regularly wear pants in the course of all manner of business and leisure.

 More importantly, we do not find in the county's policy the kind of purposeful discrimination that would trigger the equal protection clause. *See Personnel Admin. of Mass. v. Feeney,* 442 U.S. 256, 274, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (holding that in gender discrimination, "purposeful discrimination is the condition that offends the Constitution"). Concededly, the county's policy of disallowing skirts will affect women more than men because women will be prohibited from wearing an article of clothing they might choose to wear while men will not. But such incidental burden alone does not trigger a heightened level of scrutiny where, as here, the policy itself is gender-neutral. *See id.* In the absence of discriminatory intent, gender-neutral classifications that burden one sex more than the other are subject only to rational basis review. *See id.* at 271–74, 99 S.Ct. 2282. It is undisputed that the county's policy is gender-neutral; discriminatory intent is not even alleged. As a consequence, the county's rule is subject only to rational basis review. As we already concluded in discussing appellant's due process claim, the county dress code passes this test and we similarly conclude that the dress code did not violate appellant's right to equal protection of the law.

### CONCLUSION

In sum, with respect to appellant's First Amendment symbolic speech claim, Zalewska's conduct is not constitutionally protected "expressive" conduct, and her actions do not implicate free speech protections. And, although appellant may have a liberty interest in her personal appearance, requiring her to wear pants as part of her uniform did not violate her

right to due process of the law or her right to equal protection. The district court therefore was warranted in granting Sullivan County summary judgment.

Judgment affirmed.